### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| **GREAT WEST CASUALTY COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | No. 3:16-CV-03253 |
| ) | |
| **ROSS WILSON TRUCKING; TRANSPORT SERVICES OF SULLIVAN, IL, LLC; MARK J. MUNCY; STEVAN SCHMELZER; and SHELLY SCHMELZER,** ) | |
| ) | |
| **Defendants.** ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Plaintiff Great West Casualty Company's Motion for Judgment on the Pleadings (d/e 34). Plaintiff asks the Court to find that Plaintiff has no obligation to defend or indemnify Defendants Ross Wilson Trucking, Transport Services of Sullivan, IL, LLC (Transport Services), or Mark J. Muncy for the allegations in the underlying lawsuit filed by Defendants Stevan Schmelzer and Shelly Schmelzer. Because Plaintiff has failed to

demonstrate that Plaintiff is entitled to judgment as a matter of law, the Motion is DENIED.

## I. LEGAL STANDARD

A party may move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  The standard for a Rule 12(c) motion is the same as the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim.  <u>Lodholtz v. York Risk Servs. Group, Inc.</u>, 778 F.3d 635, 639 (7th Cir. 2015).  That is, the Court asks "whether the pleadings state a claim for relief that is plausible on its face."  <u>Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.</u>, --- F. 3d ---, 2017 3695355, *8 (7th Cir. Aug. 28, 2017).  The Court draws "all reasonable inferences and facts in favor of the nonmovant, but need not accept as true any legal assertions." <u>Wagner v. Teva Pharm. USA, Inc.</u>, 840 F.3d 355, 358 (7th Cir. 2016).  The Court may consider only the pleadings—the complaint, the answer, and any written instruments attached as exhibits.  <u>N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend</u>, 163 F.3d 449, 452 (7th Cir. 1998); <u>see</u> <u>also</u> <u>188 LLC v. Trinity Indus., Inc.</u>, 300 F. 3d 730, 735 (7th Cir. 2002) (on a motion to dismiss pursuant to

Rule 12(b)(6), the court may also consider documents referred to in the complaint that are central to the claim).

## II. BACKGROUND

The Court takes the following background from the Complaint for Declaratory Judgment, the exhibits attached thereto, and the Answers.

### A. Transport Services and Ross Wilson Trucking Enter Into an Independent Contractor Agreement for Owner-Operator

Transport Services and Ross Wilson Trucking entered into an "Independent Contractor Agreement for Owner-Operator" (Agreement) dated January 1, 2012.  Compl., Ex. 2 (d/e 1-3).  The Agreement provides that Transport Services is:

> a for[-]hire motor carrier of property holding licenses from the Federal Motor Carrier Safety Administration ("FMCSA") as well as various state regulatory agencies, is engaged in the business of providing transportation services for shippers, and intends to contract with CONTRACTOR, on a non-exclusive basis for the lease of motor vehicle equipment as set forth herein and for the performance of certain tasks[.]

Agreement at 1.  The Agreement identifies Ross Wilson Trucking as the "CONTRACTOR."  The Agreement reflects that Ross Wilson Trucking hauls under the authority of Transport Services.

The Equipment leased includes a 2012 Peterbilt tractor, model 386, and a 2016 Peterbilt tractor, model 579 (the latter added to the Agreement in May 2015). Agreement, App. A. Ross Wilson Trucking was required, under the Agreement, to furnish qualified drivers to operate all Equipment leased pursuant to the Agreement. Agreement ¶ 8E.

To put the Agreement in context, the Court notes that a motor carrier like Transport Services can own its own trucking equipment or can enter into a written lease with the owner of trucking equipment. See Clarendon Nat'l Ins. Co. v. Medina, 645 F.3d 928, 931 (7th Cir. 2011); see also 49 C.F.R. § 376.11 (providing the conditions under which an authorized carrier may perform authorized transportation with equipment it does not own). Under the written lease, the owner of the equipment (in this case, Ross Wilson Trucking) "grants the use of equipment, with or without a driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." 49 C.F.R. § 376.2(e) (defining "lease"); see also Clarendon, 645 F.3d at 931. The written lease must provide that the:

authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 376.12(c)(1).

In this case, the Agreement contains such a provision, which provides that, for the term of the Agreement, the Equipment is under Transport Service's exclusive possession, use, and control and that Transport Services assumes full responsibility for the operation of said equipment as to all third parties and the public at large. Agreement ¶ 3B. The Agreement also provides, however, that Ross Wilson Trucking could lease or "trip" other carriers when the Equipment was not being used by Transport Services. Id. ¶ 13B. Ross Wilson Trucking agreed to remove any signs or other identification on the Equipment containing Transport Services' name or motor carrier identification number when Ross Wilson Trucking was not operating under Transport Services' operating authorities or otherwise operating in service of Transport Services pursuant to the Agreement. Id. ¶ 13C.

The Agreement addresses which party is required to provide the necessary insurance:

> INSURANCE.  It is recognized that the United States Department of Transportation and various other regulatory bodies require the carrier under whose certificates or permits leased Equipment is being operated to be responsible to the public with respect to such Equipment while the same is being operated under its authority.  TRANSPORT SERVICES will file, or has on file, with the United States Department of Transportation and any other regulatory body having jurisdiction over its operations, evidence of insurance in such amounts as may be required by law or regulation of said agencies, and will continuously maintain in effect insurance in such amount.

> CONTRACTOR shall secure, at its sole expense, insurance in the minimum amount of $1,000,000 combined single limits covering bob-tail and dead-heading[1] on the Equipment leased herein and shall furnish TRANSPORT SERVICES with a certificate naming TRANSPORT SERVICES as an additional insured thereunder.  In addition, CONTRACTOR will carry, at its sole expense, its own insurance coverage on the Equipment leased for collision, fire, theft and other occurrence or catastrophe, and TRANSPORT SERVICES shall be named as an insured thereunder also.

Agreement ¶ 7G.  In addition, the Agreement requires that Ross Wilson Trucking carry, at its own expense, Commercial General

---

[1] Bob-tailing is the operation of a tractor without a trailer and dead-heading is the operation of a tractor while pulling an empty trailer.  See St. Paul Fire & Marine Ins. Co. v. Frankart, 69 Ill. 2d 209, 212 (1977).

Liability Coverage, Commercial Automobile coverage, and Workers' Compensation Coverage.  Id. ¶ 8A.

Finally, the Agreement contains the following indemnification provision, which Defendants assert constitutes an "insured contract":

> As between TRANSPORT SERVICES and CONTRACTOR only, without any regard or effect upon the obligations of TRANSPORT SERVICES to any third party, CONTRACTOR agrees to be responsible for, indemnify, defend and hold TRANSPORT SERVICES harmless from any and all claims of any nature, losses, personal injury, death, and/or damage to cargo or other property, and/or claim for any such loss or occurrence which may arise from or in connection with the operations performed or to be performed pursuant to this Agreement, however arising, without regard to fault or negligence on the part of CONTRACTOR.  This is to include, but is not limited to, attorneys' fees and any other expenses incurred in defending or prosecuting any claim arising as a result of any of the above or operation of the Equipment leased herein.

Id. ¶ 14.

## B.    Plaintiff Issues Non-Trucking Use Policy

Plaintiff issued a Non-Trucking Use policy of Commercial Auto Insurance to the "Independent Contractors of Transport Services of Sullivan IL, LLC" for the policy period November 1, 2015 to November 1, 2016 (the Policy).  Compl. ¶ 16.  There is no dispute

that Ross Wilson Trucking is an independent contractor of

Transport Services.  <u>See</u> Pl. Mem. at 2 (d/e 34-1).

The Policy provides for coverage as follows:

A. COVERAGE

We will pay all sums an "insured" legally must pay as
damages because of "bodily injury" or "property damage"
to which this insurance applies, caused by an "accident"
and resulting from the ownership, maintenance or use of
a covered "auto" only while:

    1.    A covered "auto" is not used to carry property
        in any business; and

    2.    A covered "auto" is not used in the business of
        anyone to whom the "auto" is rented, leased or
        loaned.

Compl. ¶ 17, Ex. 3 (d/e 1-5, p. 46 of 64).  For liability claims,

covered "autos" under the Policy are identified with the symbol "59,"

which is further defined as follows:

59= INDEPENDENT CONTRACTOR COMMERCIAL
AUTOS.  Only those trucks, tractors and "trailers[2]" on file
with us that are leased by the "motor carrier" shown in
the Declarations under this symbol and only while under
a written lease agreement of thirty (30) days or more.
This includes only those "autos" for which a premium
has been paid for the coverages offered by the policy and

---

[2] The Policy defines "trailer" as including "a semitrailer or a dolly used to
convert a semitrailer into a "trailer."  "Trailer" does not include a shipping
container but does include the chassis used to transport it."  Compl. ¶ 19 n.2,
Ex. 3 (d/e 1-4, p. 59 of 64).

only while the lease is in force.  If the lease is cancelled or expires then no coverage shall apply.

Id. ¶ 18, Ex. 3 (d/e 1-4, p. 18 of 69), (d/e 1-5, p. 44 of 64).  The

Policy defines "insureds" to include the following:

1.  WHO IS AN INSURED

The following are "insureds":

a.      You for any covered "auto"[3].

b.      Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1)    The owner, or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

* * *

c.      The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is being used exclusively by you and:

   (1)    is not used to carry property in any business; and

   (2)    is not used in the business of anyone to whom the "auto" is rented, leased or loaned.

However, Who is an Insured does not include anyone engaged in the business of transporting property by "auto" for hire who is liable for your

---

[3] Plaintiff agrees that the word "you" in the Policy refers to Ross Wilson Trucking.  See Mem. at 2-3 (noting that "You" refers to the independent contractors of Transport Services and admitting that Ross Wilson Trucking is an independent contractor); at 7 (noting that "You" refers to Ross Wilson Trucking).

conduct.

Id. ¶ 19, Ex. 3 (d/e 1-5, p. 46 of 64).  The Policy also contains

certain exclusions.  One exclusion is the non-trucking use

exclusion:

> 15.  MOTOR CARRIER OPERATIONS
>
> This insurance does not apply to:
>
> a.  A covered "auto" while used to carry property in any business; or
>
> b.  A covered "auto" while used in the business of anyone to whom the "auto" is rented, leased or loaned.

Id. ¶ 20, Ex. 3 (d/e 1-5, p. 50 of 64).

The Policy also contains another exclusion.  The Policy

provides that the insurance does not apply to liability assumed

under a contract or agreement.  Compl., Ex. 3 (d/e 1-5, p. 47 of 64).

This exclusion does not apply, however, to liability for damages that

are:

> a.  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or
>
> b.  That the "insured" would have in the absence of the contract or agreement.

Id.  The Policy defines an "insured contract" to include:

> 5.  That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement[.]

Id. (d/e 1-5, p. 58 of 64).  The Policy further provides that an "insured contract" does not include that part of any contract or agreement:

> c.  That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

Id.

## C.  The Underlying Lawsuit

On or about March 18, 2016, Stevan Schmelzer and Shelly Schmelzer filed a lawsuit titled <u>Stevan Schmelzer and Shelly Schmelzer v. Mark J. Muncy, Ross Wilson Trucking, and Transport Services of Sullivan</u>, United States District Court for the Southern District of Illinois, Case No. 16-cv-290 (the Underlying Lawsuit). Compl. ¶ 11; <u>see</u> <u>also</u> Ex. 1, Am. Compl. for Bodily Injury (d/e 1-2). The complaint in the Underlying Lawsuit alleges the following.

Muncy was an agent, servant, or employee of Ross Wilson Trucking and Transport Services.  See Compl., Ex. 1, Am. Compl. for Bodily Injury ¶¶ 11, 12 (Underlying Complaint) (d/e 1-2).  At around 6:00 p.m. on January 14, 2016, while acting in the scope of his agency or employment, Muncy operated a 2012 Peterbilt semi tractor owned by Ross Wilson Trucking on Route 130 in Richland County, Illinois.  Id. ¶¶ 13, 14, 15.  Muncy was towing a semi tanker trailer that was owned by Transport Services.  Id. ¶ 16. Muncy attempted to back his semi tractor and trailer from Route 130 into a private drive and did so in a fashion that the tanker trailer was completely blocking the southbound lane of the roadway.  Id. ¶ 17.  Stevan Schmelzer was operating a vehicle on Route 130 and collided with the semi tanker trailer.  Id. ¶¶ 18, 19. The Schmelzers allege that Muncy was negligent and his negligence caused injury and damages to the Schmelzers.  Id. ¶¶ 20, 21, 24.

## D. Transport Services Requests a Defense and Indemnity

Transport Services sent notice of the collision to Plaintiff and requested a defense and indemnity in the Underlying Lawsuit from Plaintiff pursuant to the Policy.  Compl. ¶ 14.  Plaintiff concluded

that it had no duty to defend or indemnify Transport Services, Ross Wilson Trucking, or Muncy.  Compl. ¶ 15.

**E.    Plaintiff Files Suit Seeking Declaratory Judgment**

In September 2016, Plaintiff filed a four-count Complaint for Declaratory Judgment against Ross Wilson Trucking, Transport Services, Muncy, and the Schmelzers. Plaintiff alleges that (1) the subject loss falls outside of the non-trucking coverage grant (Count I); (2) the subject loss is an excluded trucking loss (Count II); (3) Transport Services is not an insured under the Policy (Count III); and (4) Transport Services is not entitled to supplemental payments toward its defense (Count IV).  Plaintiff seeks a declaration that Plaintiff does not have a duty to defend or indemnify any party with regard to the allegations of the Underlying Lawsuit.

Ross Wilson Trucking, Transport Services, and Muncy filed an answer and affirmative defenses (d/e 32).  The three affirmative defenses raised are illusory coverage, ambiguity, and waiver and estoppel.  The Schmelzers also filed an answer and affirmative

defenses (d/e 30).  The affirmative defenses raised are improper

venue[4] and illusory coverage.

On March 13, 2017, Plaintiff filed the Motion for Judgment on

the Pleadings (d/e 34) at issue herein.

### III. ANALYSIS

Plaintiff asserts that the Policy provides coverage only to an

insured and only for the risk that a covered auto will be in an

accident when that auto is not engaged in the business of trucking.

Plaintiff asserts that the complaint in the Underlying Lawsuit

alleges that Ross Wilson Trucking and Muncy were engaged in the

business of trucking for Transport Services.  Plaintiff also argues

that Transport Services is not an insured under the Policy.

Because this Court's jurisdiction is based on diversity of

citizenship, the Court must apply state law to the substantive

issues in the case.  Lodholtz, 778 F.3d at 639.  Plaintiff asserts, and

no party disputes, that Illinois law applies.

---

[4] On February 22, 2017, this Court denied the Schmelzer's Motion to Dismiss
or, in the Alternative, to Transfer Action.  Opinion (d/e 33) (finding venue
proper in the Central District of Illinois).

Under Illinois law, an insurer's duty to defend is broader than the duty to indemnify. <u>Outboard Marine Corp. v. Liberty Mut. Ins. Co.</u>, 154 Ill. 2d 90, 125 (1992). To determine whether the insurer has a duty to defend, the court looks at the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy. <u>Id.</u> at 107-08. If the facts alleged in the underlying complaint fall within, or potentially fall within, the policy's coverage, the insurer has a duty to defend. <u>Id.</u> at 108; <u>see also</u> <u>U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.</u>, 144 Ill. 2d 64, 73 (1991) (in a declaratory action, courts in Illinois will find a duty to defend even if only one theory alleged in the underlying complaint is potentially within the policy's coverage). An insurer does not have a duty to defend where "'it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'" <u>Connecticut Indem. Co. v. DER Travel Serv., Inc.</u>, 328 F.3d 347, 349 (7th Cir. 2003) (quoting <u>Wilkin</u>, 144 Ill. 2d at 73). The court construes the underlying complaint liberally in favor of the insured. <u>Lyons v. State Farm Fire & Cas. Co.</u>, 349 Ill. App. 3d 404, 407 (2004).

The construction of an insurance policy is a question of law. Am. States Ins. Co. v. Koloms, 177 Ill. 2d 473, 480 (1997). In construing an insurance policy, the court must ascertain and give effect to the intentions of the parties as expressed in their agreement. Hobbs v. Hartford Ins. Co. of the Midwest, 214 Ill. 2d 11, 17 (2005). If the terms of the policy are clear and unambiguous, then the court gives the terms their plain and ordinary meaning. See Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd., 223 Ill. 2d 407, 416 (2006). Conversely, if the terms of the policy are susceptible of more than one meaning, then the court considers the terms ambiguous and construes the policy strictly against the insurer who drafted the policy. Rich v. Principal Life Ins. Co., 226 Ill. 2d 359, 371 (2007). Illinois courts construe the insurance policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. Id.

**A. Plaintiff is Not Entitled to Judgment on the Pleadings on the Ground that the Subject Loss is Not a Covered Loss**

The Policy excludes coverage for:

a. A covered "auto" while used to carry property in any business; or

> b.   A covered "auto" while used in the business of anyone to whom the "auto" is rented, leased or loaned.

Compl., Ex. 3 (d/e 1-5, p. 50 of 64).  Plaintiff argues that the subject loss is not a covered loss under the Policy because the Underlying Complaint alleges that Muncy was acting within the scope of his agency or employment as a trucker at the time of the accident.  Plaintiff also notes that the Underlying Complaint alleges that Muncy was towing a semi tanker trailer owned by Transport Services at the time of the accident.

Liberally construing the Underlying Complaint in favor of the insureds, the Court finds that Plaintiff has failed to demonstrate that the subject loss is not a covered loss.  First, there are no allegations in the Underlying Complaint indicating whether the semi tractor was being used to carry property.  Therefore, it is not clear that subsection (a) would apply to exclude coverage.

Second, Plaintiff has not shown that subsection (b) applies.  The Underlying Complaint alleges that, at all relevant times, Muncy was an agent, servant, or employee of Ross Wilson Trucking and Transport Services.  The Underlying Complaint also alleges that

Muncy was acting within the course and scope of his agency or employment with Ross Wilson Trucking and Transport Services.

The allegations pertaining to Muncy's agency, employment or course of his agency or employment can be construed, however, as seeking relief under different theories of recovery. As noted above, the underlying complaint is liberally construed in favor of the insured. <u>Wilkin</u>, 144 Ill. 2d at 74. And, if the underlying complaint alleges multiple theories of recovery, an insurer still has a duty to defend even if only one theory is within the coverage of the policy. <u>Pekin Ins. Co. v. Centex Homes</u>, 2017 IL App (1st) 153601, ¶ 34. In this case, the Underlying Complaint can be read to allege that Muncy was acting in the course of his agency or employment with Ross Wilson Trucking <u>and</u> Transport Services or just within the course of his agency or employment with Ross Wilson Trucking but not Transport Services. If Muncy was acting solely within the scope of his employment or agency with Ross Wilson Trucking, subsection (b) would not apply because the covered auto (the semi tractor) was not being used in the business of anyone (<u>i.e.</u> Transport Services) to whom the semi tractor was rented, leased, or loaned.

The Independent Contractor Agreement provides that the Equipment was under the exclusive possession, use, and control of Transport Services during the term of the agreement, which would suggest that the semi tractor must have been used in the business of Transport Services.  However, the Agreement also provides that Ross Wilson Trucking could lease or "trip" to other carriers when the Equipment was not being used by Transport Services. <u>Compare</u> Registration/licensing of Transport Services provision (d/e 1-3, ¶ 3B) with Subleasing/Trip Leasing/Etc. provision (d/e 1-3 ¶ 13B). Therefore, the Agreement does not conclusively show that the covered auto was being used in the business of Transport Services.

In addition, while the Underlying Complaint alleges that Muncy was towing a semi tanker trailer owned by Transport Services, there are circumstances under which a truck driver is not towing a trailer in the business of the trailer owner.  For example, in <u>St. Paul Fire & Marine Ins. Co. v. Frankart</u>, 69 Ill. 2d 209, 216 (1977), which contained a similar exclusionary provision to the one at issue herein, the Illinois Supreme Court found that the policy would exclude coverage for an accident that occurred when the tractor was pulling an empty trailer if the trailer was being used in

the business of a lessee. The Illinois Supreme Court further found, based on the evidence presented, that the assignment for the lessee continued at least until the owner-driver returned to the point where the haul originated, to the terminal from which the haul was assigned, or to the owner-driver's home terminal from which he customarily obtained his next assignment. Id. at 218 (concluding that the exclusion applied because, during the driver's return trip to his home, the tractor-trailer continued to be used in the business of lessee). Here, no facts about a Transport Services or other job assignment are alleged in the Underlying Complaint. If Muncy operated the semi tractor (the covered auto) while pulling an empty trailer and was not using the semi tractor in the business of Transport Services or anyone to whom the semi tractor was rented, leased or loaned, the Policy may provide coverage. Therefore, at this stage of the litigation, the Underlying Complaint appears to allege facts that would potentially fall within the Policy's coverage. Consequently, Plaintiff has not demonstrated that it has no duty to defend on the ground that the subject loss was not a covered loss.

**B.    Plaintiff is Not Entitled to Judgment on the Pleadings on the Ground that Transport Services is Not an Insured**

Plaintiff also argues that Transport Services is not entitled to a defense or indemnification from Plaintiff because Transport Services is not an insured under the Policy.

Plaintiff argues that Transport Services is not a named insured.  Plaintiff further notes that Transport Services is sued in the Underlying Lawsuit on the theory that Transport Services is liable for the conduct of Ross Wilson Trucking.  The Policy excludes from the definition of "insured" "anyone engaged in the business of transporting property by 'auto' for hire who is liable for your [Ross Wilson Trucking's] conduct."  Therefore, according to Plaintiff, Transport Services cannot be an insured.

However, no determination has been made whether Transport Services is liable for Ross Wilson Trucking's conduct so it is not established that the exclusion applies.  Moreover, the Court has insufficient information at this point to determine whether Transport Services is an insured under an "insured contract."  Therefore, Plaintiff has not demonstrated that Transport Services is not an insured.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (d/e 34) is DENIED.

**ENTER: September 1, 2017**

**FOR THE COURT:**

                    **s/Sue E. Myerscough**
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**